## In re ARCTIC ENTERPRISES, INC., Debtor.

## ARCTIC ENTERPRISES, INC., Plaintiff,

### v.

## DEVINE HARLEY DAVIDSON SALES, Defendant.

### Bankruptcy No. 3–81–00280.
### Adv. No. 81–0242.

United States Bankruptcy Court,
D. Minnesota.

June 24, 1982.

Robert V. Atmore, Lindquist & Vennum, Minneapolis, Minn., for plaintiff, Arctic Enterprises, Inc.

Robert H. Tennant, Bell, Arcand & Florin, St. Paul, Minn., for defendant, Devine Harley Davidson Sales (Devine).

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR JUDGMENT

JACOB DIM, Bankruptcy Judge.

The above entitled matter came on for trial before the Honorable Jacob Dim, Bankruptcy Judge, on April 4, 1982 on the complaint of the plaintiff seeking $7,751.00 allegedly due from the defendant. The defendant, by answer, alleges that, as a result of offsetting balances, the defendant owes only $2,183.06.

Based on the evidence adduced at the trial, the arguments of counsel, and the records and papers filed herein, the Court makes the following:

## FINDINGS OF FACT

1. The plaintiff Arctic filed for relief under chapter 11 of the Bankruptcy Code on February 17, 1981. The plaintiff was, among other businesses, a manufacturer of snowmobiles marketed around the nation as "Arctic Cat" snowmobiles.

2. The defendant Devine is an Ohio sporting and recreational vehicle dealer. Devine was an authorized dealer for Arctic Cat since 1978.

3. As part of its dealership, Devine performed warranty work for Arctic Cat snowmobiles. The cost of this work was to be reimbursed by Arctic. In the ordinary course of business, Arctic would credit the amounts owed to the credit accounts of its dealers. These credit accounts, denominated "01 account", were for money owed to Arctic by a dealer or by Arctic to the dealer.

4. Devine was given a credit of $958.53 for warranty work provided prior to the filing of the petition for relief by Arctic on February 17, 1981.

5. As part of a sales promotion, Arctic offered retail customers a rebate through its dealers. This promotion, "MET" program offered differing amounts of rebates based on the type of snowmobile and the numbers sold by the dealer. The amount of the rebate would be credited by Arctic to the 01 credit account of the dealer.

6. As part of the MET sales program, Devine sold 11 snowmobiles, entitling Devine to rebates and bonuses of $5,700.00, which were credited to its 01 account.

7. Devine maintained constant communication with Arctic's distributor in Lansing, Michigan. Devine had been a dealer for more than two years. Through the distributor and Devine's own information, Devine knew it could not purchase snowmobiles by using credit from its 01 account.

8. On January 21, 1981, Devine received four snowmobiles which it had ordered. The snowmobiles were delivered COD by the distributor. Devine gave Arctic, through its distributor, a check for total purchase price of $7,751.00.

9. Devine stopped payment on the check on January 26, 1981.

10. Devine contends that it was entitled to offset the mutual debts owed between itself and Arctic. Arctic contends that Devine entered into the transaction for the purpose of obtaining a right of setoff.

## CONCLUSIONS OF LAW

1. Setoff under the Bankruptcy Code is governed by 11 U.S.C. § 553. § 553(a) provides in relevant part:

" . . . this title does not affect any right of a creditor to offset a mutual debt . . . except to the extent that—

(3) the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor.

2. The debt owed to the debtor, Arctic, by such creditor, Devine, was that created by Devine's purchase of the four snowmobiles on January 21, 1981. Devine paid by check for the snowmobiles. Payment by check is conditional until the instrument is negotiated to the paying bank. The condition failed when the payment was stopped on January 26, 1981 by Devine. The debt arose on January 21, 1981 within the 90 day period under § 553(a)(3)(A).

3. § 553(a)(3)(B) is satisfied by the presumption of insolvency which is mandated by § 553(c). Devine did not rebut this presumption and it must be accepted as a matter of law.

4. The final criteria for determining whether Devine could offset its credit account with its snowmobile purchase is § 553(a)(3)(C). This requirement is a question of intent of the creditor when the debt to the debtor was created. In order to further the purpose of an equitable division of assets among creditors of the same priority, the Code prevents a creditor from obtaining greater payment by intentionally creating an offset.

5. On January 21, 1981, Devine purchased four snowmobiles with a check. At the time of issuing the check Devine intended to stop payment. Devine knew it could not use its credit on its 01 account to buy snowmobiles. Instead Devine tried to do indirectly what it could not do directly. At the time the debt was created Devine intended to offset its credit. This it cannot do.

6. The purpose of § 553(a)(3) is to prevent a creditor from intentionally incurring a debt to the debtor within the 90 day period in order to obtain a greater proportion of repayment of debts owed to the creditor than other creditors of its class. This subsection follows the principle of the preference section § 547 in disallowing intentional schemes for obtaining repayment beyond the parameters set up by the Bankruptcy Code. The attempted setoff by Devine was intentionally created by Devine to improve its position and make use of its credit balance. This falls within the ambit of § 553(a)(3)(C).

7. The purported setoff by Devine is prohibited by the terms of 11 U.S.C. § 553(a)(3). Accordingly, the debt to Arctic remains due and owing in full. Payment on the claim of Devine must be pursuant to the terms of the plan of reorganization and the provisions of the Bankruptcy Code.

## ORDER

Now Therefore, IT IS ORDERED and ADJUDGED that the defendant, Devine Harley Davidson Sales, pay to the plaintiff, Arctic Enterprises, Inc., the sum of $7,751.00, together with interest from the date hereof and costs as assessed.

LET JUDGMENT BE ENTERED ACCORDINGLY.